STATE OF WEST VIRGINIA

*In re* **E.W.**

**No. 20-0229** (Mercer County 18-JA-30-DS)

**FILED**

**September 3, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother B.W., by counsel Gerald R. Linkous, appeals the Circuit Court of Mercer County's January 27, 2020, order terminating her parental rights to E.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, Wyclif S. Farquharson, filed a response on behalf of the child in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in terminating her parental rights and in denying her post-termination visitation with the child.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2018, the DHHR filed an abuse and neglect petition alleging that when petitioner gave birth to E.W., the hospital staff observed that she was unable to perform basic caregiving tasks for the child such as feeding and holding him. Further, petitioner refused to take prescribed medications including her medication for paranoid schizophrenia. The hospital staff also reported that petitioner hit herself, repeatedly stated delusional ideations during her stay at the hospital, and could not be left unattended with the child. Thereafter, petitioner waived her preliminary hearing.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

The circuit court convened for an adjudicatory hearing in May of 2018, and petitioner stipulated that her mental health issues prevented her from properly parenting the child. The circuit court accepted petitioner's stipulation and adjudicated her as an abusing parent. The circuit court granted petitioner a post-adjudicatory improvement period and ordered her to undergo a psychological evaluation. By August of 2018, petitioner completed a psychological assessment, which found that she was not compliant with psychopharmacological interventions to treat her underlying mental health diagnosis of schizoaffective bipolar disorder and that she denied having such a diagnosis. In the opinion of the evaluator, petitioner's failure to acknowledge and treat her mental illness prevented her reunification with the child. By June of 2019, petitioner's post-adjudicatory improvement period had expired but she had been largely compliant with services. At a status hearing the same month, the circuit court granted petitioner another improvement period.

In October of 2019, the DHHR filed a motion to terminate petitioner's parental rights. At the final dispositional hearing in December of 2019, the DHHR presented testimony from a Child Protective Services ("CPS") worker who testified that petitioner's case plan required her to find employment and independent housing as well as attend parenting and adult life skills classes and individualized therapy sessions. However, the CPS worker stated that petitioner had not regularly taken her prescribed medications, had not regularly attended therapy, and failed to attain employment, income, or independent housing. Next, the DHHR provider testified that petitioner missed parenting and adult life skills classes at least once a month and had not gained the ability to adequately parent the child without constant supervision. The provider further testified that during the many months of services, petitioner often became overwhelmed during supervised visitations and would request that the visits end early. Petitioner complained that she was not able to take care of the child and would often cry and become very emotional. The provider stated that petitioner forgot what she had been previously taught and would defer care to her relative or boyfriend during many of the supervised visits. Another DHHR provider testified and confirmed that petitioner had not consistently taken her medications, did not learn the skill sets needed to take care of the child, and could not independently care for the child. She also stated that the DHHR had exhausted all means to help petitioner gain the ability to independently parent the child. Having heard the evidence presented, the circuit court concluded that there was no alternative to the termination of petitioner's parental rights. Petitioner moved for post-termination visitation during the hearing and the circuit court denied the same. By its January 27, 2020, order, the circuit court terminated petitioner's parental rights. Petitioner now appeals that order.[2]

The Court has previously held:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether

---

[2]The father's parental rights were also terminated below. According to the parties, the permanency plan for the child is adoption in his current foster placement.

such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights by failing to make the requisite findings set forth in West Virginia Code § 49-4-604(c)(6). Petitioner correctly notes that

"[w]here a trial court order terminating parental rights merely declares that there is no reasonable likelihood that a parent can eliminate the conditions of neglect, without explicitly stating factual findings in the order or on the record supporting such conclusion, and fails to state statutory findings required by [West Virginia Code § 49-4-604] on the record or in the order, the order is inadequate." Syl. Pt. 4, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 9, *In re Lilith H.*, 231 W. Va. 170, 744 S.E.2d 280 (2013). Petitioner argues that the circuit court failed to make adequate findings, as required by *Lilith H.*, in both its written termination order and on the record at the dispositional hearing. We disagree.

While the circuit court's order contains limited findings supporting its ruling, our holding cited in *Lilith H.* above provides that relevant findings must be made "in the order *or* on the record." *Id.* (emphasis added). At the dispositional hearing, the circuit court made findings regarding petitioner's mental health issues and the fact that the instant abuse and neglect proceeding had, at that time, been pending for nearly two years. Despite petitioner receiving numerous services, the circuit court concluded that "[petitioner] can't raise a child . . . [a]nd we can't put somebody with her to help her raise the child." The circuit court further concluded, "I just don't think [petitioner] has the capacity to now or in the future to care for the child" and that "all the effort in the world is not going to [go] where we need to go." These findings were based upon extensive evidence from multiple witnesses who testified that petitioner lacked the capacity to care for the child. While succinct, the circuit court's finding in regard to petitioner's inability to correct the conditions of abuse and neglect was sufficient, especially in light of the evidence concerning petitioner's total inability to provide the child with even the most basic care, such as feeding or holding the child. Upon our review, we find that the circuit court's express and well-supported findings equate to and represent a finding that there was no reasonable likelihood that petitioner could correct the conditions of neglect in the near future. Accordingly, we find no merit to petitioner's first argument on appeal.

Petitioner next argues that the circuit court erred in terminating her parental rights without employing a less-restrictive dispositional alternative such as terminating only her custodial rights.[3] We find petitioner's argument without merit.

West Virginia Code § 49-4-604(c)(6) provides that a circuit court may terminate a parent's parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the child. A court may find that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected" when

> [t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

*Id.* § 49-4-604(d)(3). As previously discussed, petitioner failed to respond to a reasonable family case plan designed to remedy the conditions of abuse and neglect. Although she participated in many of the services provided, petitioner could not provide the child with adequate care and supervision. A year and a half after petitioner received services such as adult life skills and parenting classes, she still could not change, feed, supervise, or care for the child without help from a DHHR provider or a relative. Although the circuit court did not make detailed findings in

---

[3]Petitioner relies on our holding in *In re Micah Alyn R.*, 202 W. Va. 400, 504 S.E.2d 635 (1998), where this Court declined to terminate the parental rights of a mother who was terminally ill and suffering from AIDS. However, the discussions in *Micah Alyn R.* do not apply to the facts of this case as petitioner does not suffer from a terminal illness. Rather, petitioner suffers from a mental deficiency and cannot take care of the child without constant supervision. We have noted that

> "[w]here allegations of neglect are made against parents based on intellectual incapacity of such parent(s) and their consequent inability to adequately care for their children, termination of rights should occur only after the social services system makes a thorough effort to determine whether the parent(s) can adequately care for the children with intensive long-term assistance. In such case, however, the determination of whether the parents can function with such assistance should be made as soon as possible in order to maximize the child(ren)'s chances for a permanent placement." Syllabus point 4, *In re Billy Joe M.,* 206 W.Va. 1, 521 S.E.2d 173 (1999).

Syl. Pt. 4, *In re Maranda T.*, 223 W. Va. 512, 678 S.E.2d 18 (2009). Here, the record is clear that the DHHR exhausted all available services with petitioner over nearly a two-year span and complied with our holding in *Maranda T.* Further, this Court has held that "round the clock" services are not required by this holding. *Id.* at 519, 678 S.E.2d at 25. As set forth above, testimony established that nothing short of constant supervision would allow petitioner to provide adequately for the child.

4

its final order, the record supports the termination of petitioner's parental rights as necessary for the child's welfare because petitioner had not remedied the conditions of abuse and neglect. "Ensuring finality for [the child] is vital to safeguarding [his] best interests so that [he] may have permanency and not be continually shuttled from placement to placement." *In re Cesar L.*, 221 W. Va. 249, 258, 654 S.E.2d 373, 382 (2007). E.W. requires permanency in his life, but he could not live safely with petitioner.

With respect to petitioner's assertion that a less-restrictive dispositional alternative such as the termination of her custodial rights should have been utilized, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error in the circuit court's order terminating petitioner's parental rights.

Finally, petitioner argues that the circuit court erred by not granting her request for post-termination visitation and cites the fact that the circuit court was considering permanent placement of the child with petitioner's grandmother at the time of disposition. We have held

> "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). Although petitioner claims on appeal that her grandmother will be able to exercise visitation with the child, she fails to explain how this arrangement affects the circuit court's findings regarding her own post-termination visitation. She further fails to argue that she had a bond with the child or that post-termination visitation would be in his best interest. The circuit court found that post-termination visitation was inconsistent with the child's permanency plan of adoption and concluded that visitation with petitioner would not be in the child's best interests. Considering petitioner provides no evidence to challenge these findings, we find no error in the circuit court's denial of post-termination visitation.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 27, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: September 3, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison